Daniel M. Hansen, Esq. (Nsb#13886)
dhansen@gibbsgiden.com
Madison G. Wedderspoon, Esq. (Nsb#16648)
mwedderspoon@gibbsgiden.com
**GIBBS, GIDEN, LOCHER, TURNER SENET& WITTBRODT LLP**
7251 W. Lake Mead Blvd., Suite 450
Las Vegas, Nevada 89128
(702) 836-9800

Brian C. Kimball
brian.kimball@butlersnow.com
Haley F. Gregory
haley.gregory@butlersnow.com
**BUTLER SNOW LLP**
1020 Highland Colony Pkwy
Ridgeland, MS 39157
(601) 948-5711
*Admitted Pro Hac Vice*

Attorneys for Plaintiff
STUART C. IRBY COMPANY, LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STUART C. IRBY COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COMMNV, LLC; ARIC HORNING; UPRISE FIBER, LLC; UPRISE, LLC; STEPHEN A. KROMER; KROMER INVESTMENTS, INC., AND GREAT MIDWEST INSURANCE COMPANY,<br><br>Defendants. | CASE NO.:    3:25-cv-00533-RFB-CLB<br><br><br>**STUART C. IRBY COMPANY, LLC'S OBJECTIONS TO THE MAGISTRATE'S ORDER DENYING ITS MOTION TO SEVER** |

Pursuant to Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(A), and LR IB 3-1, Plaintiff Stuart C. Irby Company, LLC objects to the March 18, 2026 order [111] denying Irby's motion to sever. The order should be set aside because it was entered before Irby's reply deadline expired as to Kromer Investments' separately filed opposition [107], and because the order is contrary to law in treating a nonbinding five-factor severance framework as controlling before Irby had the opportunity to respond to Kromer Investments' invocation of it. Alternatively, the order is

100164453.v1

clearly erroneous in the way it weighed prejudice and judicial economy while failing to grapple with the case-management problems created by the parallel criminal proceeding against Stephen Kromer.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND SUMMARY

Irby furnished materials to its customer, defendant CommNV, for use in a construction project (the "Project"). CommNV did not pay Irby for the materials. Defendant Great Midwest Insurance Company's ("Great Midwest") payment bond (the "Bond") secured payment to Project material suppliers like Irby. CommNV is liable to Irby as Irby's customer and the Bond's principal, and Great Midwest is jointly and severally liable to Irby as the Bond's surety.  These simple facts encapsulate the entirety of Irby's case against CommNV and Great Midwest (the "Payment Bond Case").  The Payment Bond Case against these two defendants does not turn on alleged criminal activities implicating the other defendants (the "Criminal Defendants"). No good reason exists for the Court to delay its decision on the Payment Bond Case.  Consequently, the Payment Bond Case requires severance from any claims against the Criminal Defendants that are subject to Fifth Amendment protection that may delay resolution of the overall case for years**.  If Irby succeeds on the limited Payment Bond Case, its claims against the Criminal Defendants become moot, and this case ends.**

Irby moved to sever Kromer Investments, Inc., Stephen A. Kromer, Uprise Fiber, LLC, and Uprise, LLC on March 2, 2026. [ECF Doc. 101]. CommNV and Horning opposed on March 3, 2026 [102], and Irby replied to that opposition on March 10, 2026. [ECF Doc. 106]. Kromer Investments ("Kromer Investments" or "KI") then filed a separate opposition on March 11, 2026, and expressly acknowledged Irby's right to file a reply to that opposition within seven days under LR 7-2(b). [ECF Doc. 107 at 1, n.1] The magistrate judge entered the order denying severance on March 18, 2026. [ECF Doc. 111].

### STANDARD OF REVIEW

100164453.v1

"A district judge may reconsider any pretrial matter referred to a magistrate judge … when it has been shown the magistrate judge's order is clearly erroneous or contrary to law." D. Nev. LR IB 3-1. For non-dispositive matters, a district court overturns a magistrate judge's determination where it has "'a definite and firm conviction that a mistake of fact has been committed' or a relevant statute, law, or rule has been omitted or misapplied." *Mayorga v. Ronaldo*, 491 F. Supp. 3d 840, 846 (D. Nev. 2020) (alteration adopted) (quoting *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 623 (1993); then citing *Grimes v. City & County. of S.F.*, 951 F.2d 236, 240–41 (9th Cir. 1991)).

## ARGUMENT

### I. OBJECTION 1: The Order Should Be Set Aside Because it was Entered Before Irby's Reply Deadline Expired as to Kromer Investments' Opposition.

For non-summary-judgment motions, LR 7-2 gives the movant seven days to reply after service of the response. D. Nev. LR 7-2(b). KI timely responded to Irby's Motion to Sever on March 11, 2026. [ECF Doc. 107]. KI acknowledged Irby's right to file a reply in its opposition, stating that it had no objection to Irby filing a reply to its opposition within seven days. [*Id.* at 1, n.1]. Under Federal Rule of Civil Procedure 6(a)(1), and LR 7-2(b), Irby's reply deadline ran through March 18, 2026. The order issued that same day, before Irby could file its reply to KI's opposition.

The error was prejudicial, not harmless, because the order actually relied on the opposition to which Irby had not yet completed briefing. The Court expressly stated that neither the motion nor the response or reply argue against the court's findings on same transaction or common questions. [ECF Doc. 111 at 4]. That matters because Irby's unfiled March 18 reply would have addressed KI's arguments on the indefinite delay caused by Kromer's criminal indictment and judicial economy.[1]

---

[1] Irby sought severance to permit its straightforward payment and bond claims against CommNV, Horning, and Great Midwest to proceed through the most economical route, without being complicated or delayed by the separate criminal proceedings involving Stephen Kromer and the Fifth Amendment and case-management issues those proceedings create. Irby's motion to sever was not a tactical effort to avoid responding to Kromer Investments' summary-judgment motion or to obtain some procedural reset, as alleged in KI's Response. [ECF Doc. No. 107, at 3]. Irby substantively responded to Kromer Investments' motion for summary judgment while also seeking

100164453.v1

Due process and orderly motion practice required a meaningful opportunity to respond before the court ruled on the arguments it considered. That principle is all the more salient here, as KI was the first party to raise the five-factor severance framework the Court ultimately adopted, but KI did not analyze this case within the framework. Under D. Nev. LR 7-2(b), Irby was entitled to reply to KI's March 11, 2026, opposition within seven days, and under Rule 6(a)(1) that period ran through March 18, 2026. But the Court entered its order on March 18, before Irby had the opportunity to file that reply. As explained below, the five-factor test is not a fixed Ninth Circuit Rule 21 standard, and the order's cited District of Nevada authority for that formulation is *MMSP, LLC v. Stovall*, which itself relied on *Anticancer, Inc. v. Pfizer Inc.*, an out-of-district California decision. The Ninth Circuit's Rule 21 cases instead describe severance in broader discretionary terms rather than through an adopted checklist. *See Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015).

## II. OBJECTION 2: The Order Adopted a Nonbinding Five-Factor Severance Framework Before Irby Had the Opportunity to Respond to It.

The order analyzed Irby's Motion to Sever under a five-factor framework, asking whether: (1) the claims arise out of the same transaction or occurrence, (2) the claims present common questions of law or fact, (3) settlement or judicial economy would be facilitated, (4) prejudice would be avoided if severance were granted, and (5) different witnesses and documentary proof are required for the separate claims. [ECF Doc. 111 at 3–5]. Kromer Investments was the first party to raise that framework in the briefing, but KI did not analyze this case within the framework (except for a brief discussion of proposed next steps that may fall under the judicial economy category), and the Court adopted it before Irby had the opportunity to file its reply to Kromer Investments' opposition. [ECF Doc. 107]

Irby does not contend that no court in this district has used the five-factor severance framework the order applied. The relevant District of Nevada authority, however, appears limited to a small number of cases, and those cases rely on nonbinding authority for the formulation. *See* severance. [*See* ECF Doc. No. 110].

4

100164453.v1

BUTLER SNOW LLP

*MMSP, LLC v. Stovall*, No. 2:22-cv-01218-JCM-BNW, 2025 WL 474181, at *2 (D. Nev. Feb. 11, 2025) (relying on *Anticancer, Inc. v. Pfizer Inc.*, No. 11CV107 JLS RBB, 2012 WL 1019796, at *1 (S.D. Cal. Mar. 26, 2012); *Hologram USA, Inc., et al. v. Pulse Evolution Corp., et al.*, No. 2:14-CV-0772-GMN-NJK, 2016 WL 779105, at * 1–2 (D. Nev. Feb. 29, 2016) (citing *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003) and *Safe Streets All. v. Alternative Holistic Healing, LLC*, No. 1:15-cv-0349-REB-BCS, 2015 WL 4245823, at *2 (D. Colo. July 14, 2015)); *Tremko v. Cap. Bank*, No. 2:24-cv-00307-APG-MDC, 2024 WL 5040437, at *2 (D. Nev. July 2, 2024) (relying on *Hologram*). The Ninth Circuit has not adopted that checklist as the governing Rule 21 standard. Rule 21 itself provides only that the court may sever a claim on just terms, and Ninth Circuit precedent describes severance in broader discretionary terms rather than through a fixed multi-factor test. *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000).

That distinction mattered here. Irby's motion did not present severance as an abstract joinder problem. Irby argued that severance was warranted because the parallel criminal proceeding involving Stephen Kromer and the resulting Fifth Amendment issues threatened delay, inefficiency, and procedural distortion if Irby's straightforward claims against CommNV, Horning, and Great Midwest remained tied to the Kromer Defendants. [ECF Doc. No. 101 at 2, 5; ECF Doc. No. 106 at 1–2, 5–7]. The Order acknowledged that background, but its analysis ultimately turned on the five-factor framework, focusing on shared project facts, overlapping issues, CommNV's crossclaims, and Kromer Investments' pending summary-judgment motion.

The timing of the ruling compounded that problem. Because Kromer Investments was the first party to inject that framework into the briefing, Irby was entitled to respond to it. Irby's unfiled March 18 reply would have addressed the same factors the Court later found dispositive, including prejudice, different proof, and the practical effect of the criminal case on the orderly progression of

100164453.v1

this action. The Court adopted that five-factor framework and denied severance before Irby had the opportunity to explain why that framework did not fully capture the prejudice and case-management concerns presented by this case.

The parallel criminal proceeding and resulting Fifth Amendment issues bore directly on prejudice, delay, and case management, and thus warranted meaningful consideration in the Court's severance analysis. The Ninth Circuit has recognized that parallel criminal proceedings and Fifth Amendment implications are legitimate case-management considerations in civil litigation. *See Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324–25 (9th Cir. 1995). Irby's point is not that *Keating* compelled severance. It is that the Court's analysis, as structured, did not meaningfully engage with the type of prejudice and case-management concern that *Keating* recognizes as relevant. For those reasons, the Order should be set aside or, at minimum, vacated and remanded for reconsideration after full briefing.

III. **OBJECTION NO. 3: Even Under the Five-Factor Framework, the Order's Analysis Misapplied the Relevant Considerations and Failed to Meaningfully Weigh the Prejudice and Case-Management Concerns Irby Raised.**

1. **The order overstated the significance of factual overlap.**

The order found that the claims against all defendants arose from the Lovelock Project and therefore shared a common transaction or occurrence and common questions. [ECF Doc. 111 at 4]. But that does not end the Rule 21 inquiry. Claims can arise from the same project yet still be severed where fairness, prejudice, or efficient case management warrant separate tracks. Here, Irby's severance request was based on the practical problem that the Kromer-related claims were uniquely entangled with a pending criminal prosecution and anticipated Fifth Amendment assertions and that Irby's claims against CommNV, Horning, and Great Midwest are straightforward and can proceed without further delay. [ECF Doc. No. 106 at 1–2]. CommNV purchased materials from Irby and did not pay for them; Horning guaranteed payment; and Great Midwest issued the payment bond. [*Id.* at 1.] Those claims do not depend on resolving the Kromer-specific issues that are complicated by the criminal proceeding. That point, at minimum, supported severance as an alternative to staying the

BUTLER SNOW LLP

6

BUTLER SNOW LIP

case. Irby's claims against the Kromer Defendants require proof of separate facts and theories not necessary to resolve Irby's claims against CommNV, Horning, and Great Midwest, including alter ego issues concerning commingling of funds and assets, shared employees and bank accounts, and undocumented loans. [*See* ECF Doc. No. 89 at 8–13; ECF Doc. No. 106 at 4–7]. Those issues turn on different evidence and, critically, on Stephen Kromer's testimony and participation. The fact that all claims relate to the Lovelock Project does not eliminate the need to prove materially different facts as to the Kromer Defendants.

### 2.  The prejudice analysis was one-sided.

The order focused on prejudice to Kromer Investments because it had a pending summary-judgment motion and to CommNV because it had crossclaims against Uprise. [ECF Doc. 111 at 5]. The order did not weigh the prejudice to Irby from continued delay attributable to Kromer's criminal posture, even though Irby's motion and replies repeatedly raised that point.

Irby's filed March 10 reply specifically explained that CommNV's claimed prejudice should carry little weight because CommNV is already pursuing the same claims it asserted in its crossclaims here in a separate state-court action against Uprise, Stephen Kromer, and Kromer Investments. [ECF No. 106 at 6]. In that lawsuit, CommNV asserted the same claims against Uprise that it asserted here, while also pursuing broader claims against additional parties. [ECF No. 106 at 6.] CommNV was already litigating multiple actions involving the same underlying conduct, and severance in this case would not deprive it of a forum in which to pursue those claims. [ECF No. 106 at 6–7.] The Court's prejudice analysis did not account for that fact or explain why CommNV's asserted prejudice outweighed Irby's prejudice from continued delay. [ECF No. 111 at 5].

Kromer Investments acknowledged that it would be difficult for Uprise and Kromer Investments to proceed to trial with Stephen Kromer under indictment and likely invoking the Fifth Amendment [ECF No. 107 at 3]. Irby's position was that Stephen Kromer's criminal proceeding had already impeded this case and would continue to do so indefinitely. Kromer Investments itself advocated a stay pending the outcome of the criminal matter, but this would compound the prejudice to Irby, whose claims against its customer and the surety in this case are straightforward.

### 3.  Kromer Investments' own position confirmed that the criminal case was an obstacle to

7

100164453.v1

**moving the Kromer-related claims forward, which strengthened rather than undermined the case for severance.**

KI did not meaningfully dispute the practical problem identified in Irby's motion: that Stephen Kromer's pending criminal proceeding and anticipated invocation of the Fifth Amendment made it difficult to move the Kromer-related claims toward trial. Instead, KI acknowledged that difficulty and argued the Court should respond by staying the case rather than severing the Kromer Defendants. [ECF No. 107 at 3–5]. That concession is material because it confirmed that the Kromer-related portion of the case was uniquely burdened by the criminal proceeding and that the resulting delay was real and not speculative.

This favors severance. If, as Kromer Investments argued, the criminal matter prevented the Kromer Defendants' portion of the case from proceeding in the ordinary course, the appropriate solution was to sever those claims so that Irby's straightforward claims against CommNV, Horning, and Great Midwest could continue without being stalled by issues unique to Stephen Kromer and the Kromer-related entities. Severance does not prejudice Kromer Investments, Uprise, or Stephen Kromer, because they can seek a stay in the separate action on the same grounds they contend justified a stay here. Nor would severance have materially prejudiced CommNV, which already was pursuing overlapping claims against Uprise, Stephen Kromer, and Kromer Investments in separate state-court litigation. [ECF No. 106 at 6–7]. The Court should not have treated Kromer Investments' stay-based position as a reason to deny severance. Rather, Kromer Investments' own position confirmed why severance was the narrower and more efficient case-management solution.

## CONCLUSION

For the foregoing reasons, Irby respectfully requests that the Court sustain these objections and set aside the Magistrate Judge's March 18, 2026 Order denying Irby's Motion to Sever. Irby further requests that the Court grant the Motion to Sever and direct that Irby's claims against Uprise, LLC, Uprise Fiber, LLC, Stephen Kromer, and Kromer Investments, Inc. proceed in a separate action, so that Irby's claims against CommNV, LLC, Aric Horning, and Great Midwest Insurance Company may proceed without further impediment. Alternatively, Irby requests that the Court vacate the Order and remand the Motion to Sever for reconsideration after full briefing and under the

BUTLER SNOW LIP

100164453.v1

proper Rule 21 analysis. Irby requests any other and further relief to which it may be entitled.


Dated:  April 1, 2026.                    BUTLER SNOW LLP


By:  /s/ Haley F. Gregory
       Brian C. Kimball
       brian.kimball@butlersnow.com
       Haley F. Gregory
       haley.gregory@butlersnow.com
       **BUTLER SNOW LLP**
       1020 Highland Colony Pkwy
       Ridgeland, MS 39157
       (601) 948-5711
       *Admitted Pro Hac Vice*

       Daniel M. Hansen, Esq.
       Nevada State Bar # 13886
       Madison G. Wedderspoon, Esq.
       Nevada State Bar # 16648
       7251 W. Lake Mead Blvd., Suite 450
       Las Vegas, Nevada 89128


       Attorneys for Plaintiff
       STUART C. IRBY COMPANY, LLC

BUTLER SNOW LIP

9

100164453.v1

**CERTIFICATE OF SERVICE**

The undersigned, an employee of the law firm of Butler Snow LLP, hereby certifies that on April 1, 2026, she served a copy of the foregoing STUART C. IRBY COMPANY, LLC'S OBJECTIONS electronically through the CM/ECF system.

_____
An employee of
Butler Snow LLP

100164453.v1